UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

UNITED STATES OF AMERICA
    Plaintiff

v.                                                                       EP-14-CR-2017KC

FELICIA WALLER,
    Defendant

## DEFENDANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE AND MEMORANDUM IN SUPPORT

TO THE HONORABLE KATHLEEN CARDONE:

NOW COMES Felicia Waller, hereinafter Defendant, in the above styled and numbered cause, under the Fourth, Fifth and Sixth Amendments to the United States Constitution. Defendant respectfully moves the Court for an order suppressing any and all evidence seized pursuant to her illegal detention. In support of this motion, Defendant would show the Court as follows:

**I.**

The Defendant has been charged with the offense of Felon in Possession of Ammunition under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant was arrested on the instant indictment on November 10, 2014. The evidence supporting the Government's allegations in the indictment stem from the search of Defendant's residence on September 25, 2014. The search of Defendant's residence was without warrant or probable cause.

Any evidence obtained from the Defendant while unlawfully in the custody or under detention by law enforcement authorities was obtained in violation of the rights of the Defendant pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution and should

be suppressed.

**FACTS**

The following facts are gleaned from the El Paso Police Department Investigation Report. Defendant does not concede that all the facts herein are true and correct but for purposes of the motion will allow the facts to be taken in the light most favorable to the Government.

On September 25, 2014 at approximately 5:50 p.m. M.S.T, Officers E. Granados and T. Ibarra, were working as a Narcotics Task Force patrol. The Officers report they observed a 2002 white SUV traveling at approximately 53 miles per hour northbound on Dyer Road in El Paso, Texas. The posted speed limit is 45 miles per hour on Dyer. As the SUV passed the Officers vehicle they assert they observed the driver, Adrienna Waller using her cell-phone while driving. The officers turned around and conducted a traffic stop on the vehicle.

The vehicle pulled over and the Officers exited their viehicle approached the SUV. Officer Granados states in his report that he "had prior knowledge" of Adrienna Waller having outstanding traffic warrants and asked her to step out of the vehicle. Officer Granados asked for proof of financial responsibility (insurance) and Ms. Waller complied. The other occupant of the vehicle was Defendant, Felicia Waller. Officer Granados reports that Defendant began to make declarations to him in words to the effect of "why you always messing with her." Officer Granados reports that he told Defendant that he had never dealt with her before. He reports that Defendant replied "Lets go to my house right now and I'll let you guys search it. You wont [sic] find anything. I want to clear my name so you fools will leave me alone." Officer Granados just happened to have a voluntary consent form handy and had Defendant sign. The Court will note that there is no evidence that the search of the SUV yielded any evidence or sign of criminal activity of any kind. There is also no evidence that Ms. Adrienne Waller was actually arrested

on these supposed "warrants" or that she was cited for the speeding and cell phone violations.

Officers Ibarra and Granados followed Defendant and Ms. Waller to 10728 Texarkana, El Paso, Texas.  The Officers were now accompanied by Officer Ramos, Officer St. Louis, and Sgt. Alvarado.  They conducted a detailed search of Defendant's residence and located the ammunition subject of the instant indictment therein.  Sometime after the Officer's located the ammunition, Officer Granados called ATF Special Agent Flemming who informed Officer Granados that Defendant had a prior felony conviction.

## APPLICABLE LAW

A traffic stop is analogous to an investigative detention other than a custodial arrest and precedent demands the Court treat a traffic stop, whether based on probable cause or reasonable suspicion, under the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam).  The Fifth Circuit has determined that "[t]he stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment." *United States v. Jones*, 234 F.3d 234, 239-40 (5th Cir. 2000).  "To determine if a seizure has exceeded the scope of a permissible *Terry* stop, we must undertake a two-step inquiry: 1) whether the officer's action was justified at its inception; and 2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place." *Id*.

The Fifth Circuit has addressed the situation where an officer's inquiries may require additional investigation.  The Court has stated where (1) the facts that emerge during the police officer's investigation of the original offense [traffic stop] create reasonable suspicion that additional criminal activity warranting additional present investigation is afoot, (2) the length of the entire detention is reasonable in light of the suspicious facts, and (3) the scope of the

3

additional investigation is reasonable in light of the suspicious facts, meaning that it is reasonable to believe that each crime investigated, if established, would likely explain the suspicious facts that gave rise to the reasonable suspicion of criminal activity. *United States v. Pack*, 612 F.3d 341, 358 (5th Cir., 2010). The Court went on to define "reasonable suspicion" in this context.

"Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the ... seizure." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir.2006). Reviewing courts making reasonable suspicion determinations "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (internal quotation marks omitted). In evaluating whether or not an officer's suspicion is reasonable, "due weight must be given ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 88 S.Ct. at 1883. "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 122 S.Ct. at 751 (internal citations and quotation marks omitted)." *Pack*, 612 F3d at 352.

The Fifth Circuit has held that "particularized suspicion" requirement does not allow police officers to detain an individual indefinitely or to go on a fishing expedition for evidence of any conceivable crime that might explain the suspicious facts they articulate as having created their reasonable suspicion. This limitation follows from the fact that both the length of the detention and the scope of the investigation to be conducted that may justify the detention remain

4

subject to a "reasonableness" requirement under Supreme Court precedent. *See Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996) ("We have long held that the 'touchstone of the Fourth Amendment is reasonableness) (quoting *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801 1803, 114 L.Ed.2d 297 (1991)); *United States v. Brigham*, 382 F.3d 500, 507 ("The correct analysis requires district courts to consider the facts and circumstances of each case ... to determine whether the actions taken by the officers, including the length of the detention, were reasonable under the circumstances."). *See also U.S. v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 1575 ("[W]e consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."); *Brigham*, 382 F.3d at 506 ("Courts ... inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop.").

## ARGUMENT

For the purposes of the Motion, Defendant will concede the first prong that the traffic stop at its inception was justified. Violations of Texas Transp. Code. § 545.352 colloquially known as speeding and Texas Transp. Code § 545.425 colloquially known as use of a cell phone while driving are sufficient justification for the stop. However, Counsel will not concede that Ms. Adrienna Waller had outstanding traffic warrants at the time of this traffic stop. Nevertheless, Counsel believes the Government will concede or stipulate that Ms. Waller was neither cited for the traffic violations nor arrested on the supposed warrants.

The second part of the inquiry is whether further investigation was reasonably related in scope to the circumstances that justified the interference in the first place. How is a search of a house reasonably related in scope to the circumstances of a traffic stop? Based on the facts as

asserted in the Officer's Incident Report there is no connection.  In fact, there is no articulable crime the Officer can point to.  Consent granted or not, the Officer's actions here could not possibly be construed as reasonable.

If the court examines this same matter under *Pack* the result is the same.  First, the facts that emerge during the police officer's investigation of the original offense [traffic stop] create reasonable suspicion that additional criminal activity warranting additional present investigation is afoot.  In this case the Officer is faced with an upset Defendant, who makes a negative declaration as criminal activity, and a person with whom he claims no other personal knowledge.  What reasonable suspicion exists under these facts?  There are none.  Second, the length of the entire detention is reasonable in light of the suspicious facts.  Counsel would proffer that the offense report contains no indication of the length of time from the initial encounter at approximately 5:20 p.m. and the end of the encounter after the search of Defendant's residence.  What is clear is that this detention extended far beyond the time necessary to dispose of the traffic offense.  Third, the scope of the additional investigation is reasonable in light of the suspicious facts, meaning that it is reasonable to believe that each crime investigated, if established, would likely explain the suspicious facts that gave rise to the reasonable suspicion of criminal activity.  Counsel expects the Officers would be hard pressed to articulate what criminal activity they would have been investigating and what kind of evidence they expected to find.

In this case Defendant was merely a passenger in the vehicle.  She was presumably under no suspicion of any offense but was not necessarily free to leave.  The Government will argue that the encounter was prolonged by Defendant's *res gesti* statements, that her offer to search her residence was unsolicited and consensual and thereby granted the Officers unfettered license to search.  But the issue remains whether there was sufficient justification or "particularized

suspicion" to extend the search not just to the vehicle but to a completely different location, Defendant's residence.  Counsel would remind the Court that Defendant was not released from the initial encounter nor was Ms. Waller.  Consent does not obviate the detention.  It would be impossible for the Government to argue that the traffic stop gave the officers any cause whatsoever to search Defendant's house absent her consent.  With or without consent does the traffic stop grant the Government license, to go fishing for "every conceivable crime that might explain the suspicious facts they articulate as having created their reasonable suspicion." *Ohio v. Robinette*, 519 U.S. at 33.  The actions of the officers here were not only unreasonable they are unconscionable.  I defy the El Paso Police Department to articulate what facts they relied upon to justify the continued detention of Defendant beyond the traffic stop.  What were they looking for?  What did they expect or even hope to find?  Why were none of these facts noted in the Incident Report?  An offer to search a residence from a frustrated detainee should not absolve the State or the Government from having to articulate at a minimum the reasonable suspicion for the intrusion.  Officers are not allowed to go door to door seeking consent to search from the occupants without some other reason to intrude upon the privacy of the individual.

     Assuming for the sake of argument the veracity of the Officer's report, these officers were faced with a negative declaration and no other information to suggest that Defendant was in fact engaged in some criminal activity. Counsel is waiting with baited breath to see how the Government chooses to characterize this encounter.  How does an assertion of no criminal activity establish the "particularized suspicion" that further criminal activity is afoot to justify the extension an encounter further into matters totally unrelated to the traffic stop?  Moreover, it is problematic for the Government in that there is no evidence that a search of the SUV or the Wallers individually yielded any evidence or sign of additional criminal activity; at least none

that is noted in the Incident Report. Additionally, if you take Officer Granados at his word that he had no knowledge of Felicia Waller prior to this, that coupled with an assertion that "you will find nothing at my house," "I just want to be left alone," "I want to clear my name," would mandate the encounter end under *Terry* and its line of cases.

The Government will argue that Defendant's consent justifies the search. However, the law still requires some "particularized suspicion" to justify the detention. Even in a "knock and talk" situation the case law suggests that there must be some "reasonable suspicion" to justify the intrusion, i.e. approaching a house to question the occupants and perhaps obtain consent to search. Reasonable suspicion cannot justify the warrantless search of a house. *See Arizona v. Hicks*, 480 U.S. 321, 328, 107 S.Ct. 1149 1154, 94 L.Ed.2d 347 (1987), but it can justify the agents' approaching the house to question the occupants. *United States v. Knight*, 451 F.2d 275, 278 (5th Cir., 1972), *Davis v. United States*, 327 F.2d 301, 303 (9th Cir.1964). In short, what facts justify the intrusion prior to the imposition by the government asking for written consent.

In this case, there is no objective articulable suspicion either particularized, reasonable or otherwise. This was clearly a fishing expedition and was far and away outside the scope of the initial detention that was a traffic stop in which Defendant was merely a passenger. Whether Defendant offered her residence up for search still provides no suspicion of any kind that would warrant the imposition or intrusion. Despite Defendant's offer and consent what makes the State's intrusion reasonable under the circumstances and the limited authority to detain pursuant to the traffic stop? Defendant's declaration does not give license to the State to exceed the authority allowed it by the 4th Amendment.

## CONCLUSION

Defendant asserts that his detention after the conclusion of its primary purpose, that is the

traffic stop, that she should have been free to leave.  There was no other exigency or crime in progress that would have justified her continued detention with or without consent to search.  Therefore, any statements made by Defendant thereafter are fruits of the illegal detention and should be suppressed.

## PRAYER FOR RELIEF

Defendant prays the Court grant her motion on the pleadings and assertions herein submitted in this motion for the Court's consideration.  In the alternative, Defendant requests a hearing to present evidence, testimony and argument on the issues raised by this motion.

Respectfully Submitted,

/s/Leonard Morales

Leonard Morales
Texas State Bar Number:  24010247
Law Office of Leonard Morales
221 North Kansas St., Suite 1103
El Paso, TX 79901
Telephone:  (915) 546-2696
Fax:  (915) 532-0904

Attorney for the Defendant,
Felicia Waller

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the Defendant Felicia Waller's Motion to Suppress Illegally Obtained Evidence was sent via CM/ECF submission to the Office of the United States Attorney, Western District of Texas, El Paso Division in accordance with Federal Rules of Criminal Procedure on February 18, 2015.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

UNITED STATES OF AMERICA
    Plaintiff

v.                                                                                                EP-14-CR-2017KC

FELICIA WALLER,
    Defendant

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS
## ILLEGALLY OBTAINED EVIDENCE

Defendant, Felicia Waller's Motion to Suppress Illegally Obtained Evidence is hereby:

_____        GRANTED

_____        DENIED


Signed in El Paso, Texas on this the \_\_\_\_\_ day of _____, 2015.


                                                                        _____
                                                                        KATHLEEN CARDONE
                                                                        UNITED STATES DISTRICT COURT JUDGE