IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.   EP-14-CR-2017-KC |
| | ) | |
| FELICIA WALLER | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO RETURN PROPERTY PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE RULE 41(g)**

COMES NOW the United States of America, by and through the Acting United States Attorney for the Western District of Texas, and files this Response to Defendant's Motion to Return Property Pursuant to Federal Rules of Criminal Procedure Rule 41(g), and for cause would show the following:

**I.**

**SUMMARY OF THE FACTS**

The Summary of Facts is taken from the reports of investigation that were supplied to **FELICIA WALLER,** the Defendant, in discovery and interviews with witnesses to the incident. The Government reserves the right to supplement the facts should additional information become known.

On September 25, 2014, El Paso Police Department ("EPPD") officers were on routine patrol in the area of the 6000 block of Dyer Street, El Paso, Texas when they observed a 2002 white Tahoe SUV traveling north on Dyer Street.  The white Tahoe SUV was speeding in violation of Texas law (53 mph in a 45 mph zone); in addition the officers also noted that the driver was using her cell phone, also in violation of Texas law.  The officers followed the

vehicle and made a traffic stop in the 9000 block of Dyer Street. The vehicle was being operated by A. W. ("driver") who was accompanied by the defendant, Felicia Waller ("Defendant"). EPPD Officer Ibarra ("Ibarra") made contact with the driver and advised her why she had been stopped. The other EPPD officer ("Granados") made contact with Defendant. Officer Ibarra, who had previously dealt with the driver, remembered that she had outstanding warrants, asked the driver to step out of the vehicle and asked her if she had taken care of her outstanding warrants. Officer Ibarra then requested a check for warrants for the driver and a check on Defendant.

As Officer Ibarra was talking to the driver of the vehicle, Officer Granados met with Defendant and asked her for her identification. The Defendant provided a State of Texas ID and stated that she was the owner of the vehicle. Officer Granados then asked for proof of financial responsibility for the vehicle. The Defendant handed the officer her proof and seemed to Officer Granados to be in an agitated state, i.e. sighing and muttering under her breath. Officer Granados asked Defendant if she was alright and Defendant asked why they were "messin with her?" and that she was tired of it. The Defendant stated that she felt like she was being harassed by police officers because vehicles were being stopped leaving her residence. The Defendant further stated, "Someone probably threw my name out there that's why you're watching me." Officer Granados advised Defendant that he had never dealt with her before. The Defendant then stated, "I'm not stupid I know I am being watched". The Defendant then said to Officer Granados, "Let's go to my house right now and I'll let you guys search it. You won't find anything. I want to clear my name so you fools will leave me alone". This exchange, between Officer Granados and the Defendant, occurred as Officer Ibarra was awaiting the results of the records check that he had requested. Officer Granados called his supervisor and informed the supervisor of what the Defendant had said. Officer Granados was then given permission to proceed to Defendant's

residence to conduct a search of the residence. Officer Granados then asked the Defendant if she was willing to sign a consent form for her residence located at 10728 Texarkana, El Paso, Texas, which is located in the Western District of Texas. Officer Granados obtained a "consent to search" form from Officer Ibarra's duty bag. The Defendant was advised that this was a voluntary form and that she was in no way required to sign if she did not want to and that she was more than welcome to decline consent. The Defendant stated that she wanted to clear her name and signed the form.[1] All the EPPD officers followed the white Tahoe SUV, occupied by the driver and the Defendant to the Texarkana residence, and located approximately three to four miles away, where they were joined by an EPPD supervisor.

Before they began the search Granados again asked the Defendant if she was sure about the search and that she could withdraw her consent at any time, the Defendant replied that she understood. The Defendant was advised that she could follow them as they searched the house. The Defendant replied that she understood. Prior to entering the Defendant's residence, the Defendant removed a large dog from the house; the officers then entered a bedroom on the northeast side of the residence and were advised by the Defendant that it was her room. The Defendant remained in the room as the officers searched. Granados opened the top left drawer of a dresser and found a black Five Star bag. The bag was opened and was found to contain several 9 mm rounds. The Defendant was asked about the ammo in the bag and she replied, "That's my ammo, I go shooting at the range with a friend, and I use that ammo". Granados then saw an orange "Tang" box next to a TV stand/dresser. Granados opened the "Tang" box; inside were several shotgun shells. The Defendant was asked about the "Tang" box and she replied, "Those are mine also. What, is it illegal to own shotgun shells?" Granados asked the Defendant if she

---

1 Sometime during the encounter two other EPPD officers responded to assist at the scene of the traffic stop because a female EPPD officer was requested (since the persons encountered were females). The EPPD officers that responded were St. Louis and Ramos.

had ever been convicted of a felony. The Defendant replied, "that's done with." Granados advised the Defendant that the EPPD was going to seize the ammunition. The Defendant then replied to go ahead and take it, that if she was not supposed to have it then she did not want it in her house. Another officer conducted a search of the bathroom where, in the top left drawer of the bathroom counter, he located a plastic baggie containing one 9mm round.

The Five Star bag was found to contain a total of 31 rounds of 9mm ammunition of various manufacture, 1 round of .40 cal. ammunition and 12 rounds of 9mm hollow-point ammunition. The "Tang" box was found to contain 21 rounds of Remington 12 gauge ammunition. The various rounds of ammunition were seized by the EPPD and turned over to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

On November 5, 2014, the Defendant was charged in an Indictment with Felon in Possession of Ammunition, which is a violation of Title 18 U.S.C., Sections 922(g)(1) and 924(a)(2) and a warrant for her arrest was issued. On November 13, 2014, the Defendant was stopped while she was operating a 1997 Dodge Ram pickup near the intersection of Hondo Pass and Gateway North, El Paso, Texas. EPPD officers stopped the vehicle for traffic violations and upon making contact with the driver (Defendant) recognized her; the EPPD officers had knowledge that the Defendant had an outstanding federal arrest warrant. The Defendant stopped the vehicle at the Valero service station located at the intersection. The Defendant was accompanied by her dog and when the Defendant was arrested, on the outstanding federal warrant, and was allowed to telephone someone to come to the location and take custody of the dog. A female friend of the Defendant went to the location and took custody of the dog; because the friend had driven her own vehicle to the location it was physically impossible for her to take custody of the Dodge pickup. As a result, pursuant to EPPD policy, the vehicle was impounded by the EPPD as it could not be left or abandoned at the service station. The Defendant was informed by the

EPPD officers that the registered owner, apparently Gloria Waller ("Waller") the mother of the Defendant, of the Dodge Ram pickup could retrieve the vehicle at any time. Furthermore, the EPPD had been informed by Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Brett Fleming that no hold was to be placed on the vehicle for the ATF as the ATF had no need for the pickup.

## II.

## ISSUE

The Defendant and her mother request that the 1997 Dodge Ram Pickup, Texas License 73NHH8, be returned.

## III.

## ARGUMENT

Rule 41(g) of the Federal Rules of Criminal Procedure provides, in pertinent part:

> "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion…."

Fed. R. Crim. P. 41. (West 2014). A court is the proper venue if it sits in the same district where the property was seized. *United States v. Clymore*, 217 F.3d 370, 373 (5th Cir. 2002); Fed. R. Crim. Pro. 41(g). Under Rule 41(g), a person whose property has been seized is presumed to have a right to its return. *Bailey v. United States*, 508 F.3d 736, (5th Cir. 2007) (citing *United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001).

Rule 41(g) assumes that the government is still in possession of the property, but if the government proves that it no longer possesses the seized property, Defendant's motion "must be denied because the government cannot return property it does not possess." *Id.* at 740.

The property (1997 Dodge Ram pickup) was impounded by Texas state law-enforcement

officers.  There are limited circumstances under which Rule 41(g) can be used to petition for the return of property seized by state authorities.  *U.S. v. Copeman*, 458 F.3d 1070 (10th Cir. 2006). "Those circumstances include actual federal possession of the property forfeited by the state, constructive federal possession where the property was considered evidence in the federal prosecution or instances where property was seized by state officials acting at the direction of federal authorities in an agency capacity."  *Id*. at 1071, citing *Clymore v. U.S.*, 164 F.3d 569, 571 (10th Cir. 1999); *see also*, *Hill v. U.S.*, 296 F.R.D. 411, 414 (E.D. Va. 2013), *affirmed by*, *Hill v. United States*, 567 Fed. Appx. 202 (4th Cir. 2014).

As to the first circumstance the federal government, in the instant case, has never had actual possession of the Dodge Ram pickup nor has the vehicle been forfeited by state authorities. The Dodge Ram pickup remains in the possession of state authorities.  *See e.g.*, *U.S. v. Solis*, 108 F.3d 722, 723 (7th Cir. 1997) ("Because the United States was not in possession of the vehicle at the time Mr. Solis filed his motion, and, indeed had never been in possession of the vehicle, it is not the appropriate party from which to seek it's return").  *See also*, *Otero-Mendez v. U.S.*, WL 5488420 (W.D. Tex. 2014).   The Defendant cannot therefore seek return under this circumstance.

In the second circumstance, the Dodge Ram pickup cannot be in the constructive possession of the United States where it is not considered evidence in the federal prosecution. ATF Special Agent Brett Fleming specifically informed the EPPD officers who arrested the Defendant that no hold was to be placed on the vehicle for the ATF as the ATF had no need of the pickup.  The pickup is not evidence in the federal prosecution of the Defendant. As such, the second circumstance under which one can petition for the return of property under Rule 41(g) is unavailing.  "[P]roperty seized and held by state law-enforcement officers is not in the constructive possession of the United States for Rule 41(g) purposes unless it is being held for potential use as evidence in a federal prosecution".  *Copeman* at 1072.

Finally, the circumstance where property was seized by state officials acting at the direction of federal authorities in an agency capacity is similarly unavailing. The EPPD only executed the federal arrest warrant of the Defendant. The ATF did not direct the EPPD to seize any property in connection with the arrest of the Defendant; as such the EPPD were not "agents" of the ATF in the seizure of property. The Dodge Ram pickup was impounded in accordance with EPPD procedure since the vehicle could not be left unattended at the scene of the arrest. Furthermore, the ATF case agent specifically told the EPPD not to hold the vehicle for the ATF for evidentiary or other purposes.

## IV.

## CONCLUSION

WHEREFORE, premises considered, the Government respectfully submits the defendant's motion is not well-taken and should be dismissed.

> Respectfully submitted,
>
> RICHARD L. DURBIN, JR.
> ACTING UNITED STATES ATTORNEY

By: _____/s/_____
CARLOS G. HERMOSILLO
Assistant U.S. Attorney
Texas Bar #09514450
700 E. San Antonio, Suite 200
El Paso, Texas   79901
(915) 534-6884

## CERTIFICATE OF SERVICE

This is to certify that on 2nd day of March, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Leonard Morales
Attorney for Defendant

_____/s/_____
CARLOS G. HERMOSILLO

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CRIMINAL NO.   EP-14-CR-2017-KC** |
| ) | |
| **FELICIA WALLER** ) | |
| ) | |
| **Defendant.** ) | |

## **ORDER**

Came on to be considered Government's Response to Defendant's Motion to Return Property Pursuant to Federal Rules of Criminal Procedure Rule 41(g), and after careful consideration, it is determined by the Court that Defendant's Motion is DISMISSED.

So ORDERED.

SIGNED and ENTERED this the _____ day of _____, 2015.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE